HIRSCHKOVITZ v. PENNSYLVANIA R. CO.

(Circuit Court, S. D. New York. May 30, 1905.)

1. WRONGFUL DEATH—STATUTES—MEASURE OF DAMAGES.

In an action for wrongful death, under a statute providing that in every such action the jury may give such damages as they shall deem fair and just, with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person, the verdict should not exceed the value of the pecuniary assistance the jury believes the next of kin living at decedent's death would have received from him, had he lived. The jury may not fix these damages arbitrarily. There must be some evidence to sustain the amount of the verdict.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, § 111.]

2. SAME—STATUTES—CONSTRUCTION—RIGHTS OF ALIENS.

Where a statute authorizing a recovery for wrongful death provided that such recovery shall be for the exclusive benefit "of the widow and next of kin of such deceased person," and shall be distributed to them in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate, it was no defense to an action for wrongful death that deceased had no widow, and that all of his next of kin were nonresident aliens.

3. SAME—DAMAGES—EXCESSIVENESS.

Deceased was killed by the negligence of defendant when he was 27 years of age. He had been in the United States from 2½ to 5 years, was a common laborer, employed at $1.50 per day as a car cleaner, and had been previously employed as a railroad waterman. He was unmarried, and there was evidence that he sent from $20 to $25 per month to his father, in Roumania, who was 65 years of age at the time deceased died. Held, that a verdict for $3,500 was excessive, and should be reduced to $2,500.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Death, §§ 125, 130.]

At Law. Motion for new trial on ground, among others, that the damages awarded by the jury ($3,500) are excessive.

Max Altmayer, for plaintiff.

Robinson, Biddle & Ward, for defendant.

RAY, District Judge. This action, tried before a jury, resulted in a verdict of $3,500 for the plaintiff. The jury found negligence of defendant, causing the death of plaintiff's intestate, based on evidence and a charge to which no exceptions now urged were taken, except that as to the longevity of the parents and grandparents of the deceased. The action is based on a statute of the state of New Jersey, the pertinent sections of which read as follows:

"Section 1. That whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case, the person who, or the corporation which would have been liable if death had ensued, shall be liable for an action for damages notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony.

"Sec. 2. That every such action shall be brought by and in the name of the personal representative of such deceased person, and the recovery in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of

kin in the proportion provided by law in relation to the distribution of the personal property left by persons dying intestate. In every such action the jury may give such damages as they shall deem fair and just with reference to the pecuniary injury resulting from such death to the wife and next of kin of such deceased person, provided that every such action shall be commenced within twelve calendar months after the death of such deceased person."

1 Gen. St. p. 1188.

In this case the next of kin to decedent, Josefsohn, is the father, now 67 years of age—65 at the time of the death of the son—and a resident and citizen of the kingdom of Roumania. He has five other children residing in the old country, all poor, and having families of their own—two boys and three girls. There is no proof of property in the family, or a suggestion that Josefsohn would have fallen heir to any property. He was 27 years of age at his death and unmarried; had been in this country about 2½ to 5 years; was a common laborer here, receiving $1.50 per day as a car cleaner, and had been employed at that work for a few days only. Before that he had been in the employ of the defendant at Pittsburgh, Pa., as a waterman—supplying cars with water. There is proof, of a somewhat indefinite character, that decedent was sending about $20 per month of his earnings to his father, in the old country—sometimes $20, sometimes less, sometimes $25 per month. In the old country the decedent was a clerk in a dry goods store. The proof fails to show steady employment or prospects of any material advancement in his position. He was not a skilled workman in any field of labor. Maybe he would have remained in the United States, remained unmarried, prospered, and proved able to send large sums to the father. Maybe not. Maybe the father will live a quarter of a century, but maybe the son would have died in a few years. It is quite true that there is no fixed rule of damages in such cases. In this case the court said to the jury, among other things, at the request of the plaintiff's attorney:

"The damages to the next of kin in that respect are necessarily indefinite, prospective, and contingent. They cannot be proved with even an approach to accuracy, and yet they are to be estimated and awarded, for the statute has so commanded. But even in such a case there is and there must be some basis in the proof for the estimate. Human lives are not all of the same value to the survivors. The age and sex, the general health and intelligence, of the person killed, the situation and condition of the survivors, and their relation to the deceased—these elements furnish some basis for judgment. That it is slender and inadequate is true, but it is all that is possible. In but few cases arising under this act is the plaintiff able to show direct, specific, pecuniary losses suffered by the next of kin from the death; and generally the basis for the allowance of damages has to be found in the proof of the character, qualities, capacity, and condition of the deceased, and in the age, sex, circumstances, and condition of the next of kin. The proof may be unsatisfactory, and the damages may be quite uncertain and contingent, yet jurors in each case must take the elements thus furnished, and make the best estimate of damages they can. There seems to be no other mode of administering the statute referred to, and the protection against excessive verdicts must be found in the power of courts to revise or set aside."

I do not think the evidence justified a verdict of $3,500. It does not seem probable to this court that this son could have sent $20 to

$25 per month to his father. He had to live. Assuming that he earned $39 per month regularly, it seems improbable that he could have done this. The witnesses who spoke on the subject were deeply interested, and, again, it appeared that they could not have known with precision—assuming there was no exaggeration—the amounts sent. By reason of the fact that the tables put in evidence were called the "Northampton Tables," the court made an error in stating the expectancy of life, but this was prejudicial to the plaintiff, not the defendant. This court is of the opinion that the verdicts of juries in this class of cases as to damages should be based on facts shown by evidence, and not on guesses or speculation or conjecture. In Lindstrom v. International Navigation Co. (C. C.) 117 Fed. 170, the judge reduced a verdict of $5,000 to $1,500, and granted a new trial unless the plaintiff should consent thereto. It is true that a jury may find the expectation of life of a given decedent was much greater than shown by tables, and it is also true that a recovery in such a case as this is not restricted to the amount shown to have been furnished by the decedent to the next of kin, multiplied by the expectancy of life. It is also true in such cases that the plaintiff's recovery is restricted to pecuniary damages, and such damages as are shown by some evidence to have been sustained. It has been stated in some cases that a sum may be given by the jury that, put at interest, would produce an annual income equal to the amount furnished annually by the decedent. This court cannot assent to that doctrine. The verdict should not exceed the value of the pecuniary assistance the jury believes the next of kin living at the death of the decedent would have received from him, had he lived.

At the close of the plaintiff's case the defendant moved for a dismissal of the complaint and the direction of a verdict for the defendant upon the ground, among others, that the purpose of the act above quoted, giving the widow and next of kin a right of recovery in case of the death of the person injured, is to benefit such next of kin when citizens of, or at least residents in, the United States, or some state of the United States, and that the right of recovery is confined to our own citizens, or at least to residents of the United States, and that nonresident aliens cannot avail themselves of the benefits of the act, and an administrator appointed here cannot recover for the benefit of a nonresident alien. The court denied the motion, and said, in substance:

"I do not see how by any possibility such a limited construction can be given to this New Jersey statute. The language is plain—that every such action shall be brought by and in the name of the personal representative of such deceased person, and the recovery in every such action shall be for the exclusive benefit of the widow and next of kin of such deceased person, and shall be distributed to such widow and next of kin in the same proportion provided by law in relation to the distribution of the personal property left by the persons dying intestate. It seems to me that if the Legislature of New Jersey had intended to confine that recovery to the widow and next of kin, residents or citizens of New Jersey, or citizens of the United States, and to exclude nonresident aliens, they would have so said. I will deny the motion."

On thorough consideration, I adhere to that ruling. It seems. clear that the purpose of the Legislature of a state in enacting such a statute is not to give compensation by way of damages to the widow and next of kin who are residents of or citizens of the state or of the United States alone, and prevent their becoming a public charge, but to give this compensation by way of damages to the widow and next of kin for the pecuniary loss they have sustained, irrespective of their residence or citizenship. Had the Legislature of New Jersey intended to restrict recovery in such a case by an administrator for the benefit of the widow and next of kin of the decedent to a resident widow or resident next of kin, or both, or to a widow and next of kin who are citizens of the United States, it would have so said. The statute would have been made plain. As I look at it, such a limited and restricted interpretation would be opposed to all legitimate rules of statutory construction.

The motion for a new trial is granted, because the damages are excessive, unless the plaintiff consents, in writing, within 20 days, to reduce the verdict to $2,500. If such a consent is filed and served within that time, the motion is denied.